UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAWN ATKINSON, #279579,

                    Plaintiff,              CIVIL ACTION NO. 12-11905

                                            DISTRICT JUDGE MARK A. GOLDSMITH

v.
                                            MAGISTRATE JUDGE MARK A. RANDON

RONALD WYSE, et al.,

                    Defendants.
_____/

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR LEAVE
TO FILE AMENDED COMPLAINT (DKT. NO. 14), GRANT DEFENDANTS'
MOTIONS TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT
(DKT. NOS. 16, 26), AND DENY PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT (DKT. NOS. 21, 22)**

## I.    INTRODUCTION

Plaintiff Shawn Atkinson brings this *pro se* prisoner civil rights case, pursuant to 42

U.S.C. § 1983. Atkinson's Complaint alleges Defendants engaged in collective and systemized

retaliation, after he accused Corrections Officer Ronald Wyse of sexual assault. Atkinson

requests monetary damages and various forms of injunctive relief.[1]

Atkinson's motion for a proposed amended complaint (Dkt. No. 14) and Defendants'

motions to dismiss Atkinson's complaint, or in the alternative, motions for summary judgment

are pending (Dkt. Nos. 16, 26). Atkinson has responded (Dkt. Nos. 21, 22, 29); the Court

dispenses with oral argument. *See* E.D. Mich. LR 7.1(f)(2). For the following reasons, this

Magistrate Judge **RECOMMENDS** that Defendants' motions be **GRANTED**, Atkinson's

---

[1] Requested remedies include expungement of his criminal record, a governor's pardon, and termination of Wyse's employment.

motions be **DENIED**, and his Complaint be **DISMISSED WITHOUT PREJUDICE** as to Polzien and Herron and his state law claims, and **DISMISSED WITH PREJUDICE** to all other Defendants.

## II.    PROCEDURAL HISTORY

Atkinson was confined in the Michigan Department of Corrections ("MDOC") at the Parnall Correctional Facility ("SMT") in Jackson, Michigan during the relevant time period.[2] His Complaint alleges violations of his constitutional rights by the following Defendants, all of whom were SMT employees during the relevant time periods: Warden Debra Scutt ("Scutt"); Deputy Warden Cascelia Brown-Brandon ("Brown"); Inspector Cheryl Bradshaw ("Bradshaw"); Lieutenants Violet Stone ("Stone") and Sanequa Owens ("Owens"); Sergeant Lebaron Rodgers ("Rodgers"); Corrections Resident Representative (Grievance Coordinator) Mary Cooke ("Cooke"); Assistant Resident Unit Supervisors (ARUS) Karen Smith ("Smith") and Filip Schort ("Schort"); Acting Grievance Coordinator Jonetta Murchinson ("Murchinson"); and, Corrections Officers Thomas Meeker ("Meeker"), Lewis Custard ("Custard") and Ronald Wyse ("Wyse") (collectively, "the initial Defendants").

In May and June of 2012, Atkinson moved for leave to file a supplemental complaint (Dkt. Nos. 7, 8). District Judge Mark A. Goldsmith referred these motions and all other pretrial matters to this Magistrate Judge (Dkt. No. 10). This Magistrate Judge subsequently denied Atkinson's motion for leave to file without prejudice (Dkt. No. 13). Finding that Atkinson's purported amended complaint was deficient, he was directed to "re-file a motion for leave to amend, with a proposed amended complaint attached that sets forth all of [his] allegations in a

---

[2] Atkinson was paroled on October 31, 2012 (Dkt. No. 23).

single, legible, document[, no later than] August 31, 2012" (Dkt. No. 13). On August 30, 2012, Atkinson filed a motion for leave to file an amended complaint; a proposed amended complaint – which adds Defendants (John Doe) Herron and (John Doe) Polzien – was included in the filing, and its propriety is now before this Court (Dkt. No. 14).[3]

On September 10, 2012, while Atkinson's motion for leave to file an amended complaint was pending, the initial Defendants – with the exception of Meeker – filed a motion to dismiss, or in the alternative, for summary judgment (Dkt. No. 16). The motion incorporates Atkinson's initial Complaint and makes no mention of his proposed amended complaint, or its two additional Defendants, Herron and Polzien.

Atkinson filed a cross motion for summary judgment on October 3, 2012; Atkinson's motion incorporates his proposed amended complaint by reference, including his allegations against Polzien and Herron (Dkt. No. 22). On February 25, 2013, Meeker filed a motion to dismiss, or in the alternative, for summary judgment; it merely incorporates by reference the initial Defendants' arguments as they relate to Atkinson's failure to exhaust administrative remedies, and Eleventh Amendment and qualified immunity (Dkt. No. 26). This Magistrate Judge ordered Atkinson to respond to Meeker's motion on March 1, 2013 and, on March 18, 2013, Atkinson responded to Meeker's motion via a declaration (Dkt. No. 29).[4]

_____

[3] Polzien and Herron were never served (Dkt. No. 14). But, as discussed below, this Magistrate Judge finds it would be futile and an uneconomical use of judicial resources to conduct further proceedings against these Defendants.

[4] Atkinson's Declaration is two pages that calls Defendants' claim frivolous; states that "[he] exhausted administrative means a[s] a remedy on [four] seperate [sic] occasions concerning this case"; and states that "their [sic] is a genuine issue of material fact that if proved at trial will entitle [him] to judgement [sic]" (Dkt. No. 29). On the same date, Atkinson also filed a Notice and Request (Dkt. No. 30). In it, he requests an extension on all future filings because he was denied an ink pen (Dkt. No. 30). With Atkinson having responded to the moving parties'

### III.    FACTUAL BACKGROUND[5]

#### A. *Initial Complaint*

On July 29, 2011, Wyse stopped Atkinson for a pat down while Atkinson was returning from breakfast; Wyse "grabbed [Atkinson's] breasts and nipples," then proceeded to run his hand down Atkinson's inner groin area "in a very disturbing manner" (Dkt. No. 1 at ¶ 1). Atkinson became upset and, upon returning to his bunk, told other inmates that Wyse had molested him (*Id.*).

On July 30, 2011, Wyse kicked Atkinson's bunk to wake him up, forced him to submit to a second pat down search, and sent him to the TV room to permit Wyse's search of his cube; Atkinson returned to find his area "completely destroyed," with all of his clothes on the floor (*Id.* at ¶ 2). Wyse refused to let Atkinson speak with the Shift Sergeant about the "destruction done to [his] area of control," and directed Atkinson to clean his cube (*Id.*). Wyse returned to Atkinson's cube in order to issue him a misconduct for dangerous contraband – sand paper; J. Rohrig, the hearings investigator, ultimately dismissed the misconduct for procedural reasons (*Id.* at ¶ 23; Dkt. No. 16-9 at 34).

On August 1, 2011, Atkinson filed Step I of grievance SMT11080094117c ("the sexual misconduct grievance"), alleging sexual misconduct against Wyse (*Id.* at ¶ 3.) Atkinson was interviewed by Bradshaw, and named four inmate witnesses that he had spoken to about the incident (*Id.*). Bradshaw never interviewed Atkinson's witnesses, and falsely stated in her denial that Atkinson said nothing to anyone immediately following the incident (*Id.*).

---

dispositive motions, granting such a request is unnecessary; it is therefore **DENIED** (Dkt. No. 30).

[5] The facts are viewed in the light most favorable to Atkinson.

-4-

On August 11, 2011, Atkinson filed a Step II appeal of the sexual misconduct grievance; it was denied by Scutt, who did not interview Atkinson or any of his witnesses (*Id.* at ¶ 4). On August 19, 2011, Atkinson sent his Step III grievance appeal to Lansing – again alleging that his witnesses were not interviewed – which was ultimately denied (*Id.* at ¶¶ 4-5).

On October 28, 2011, Smith called Atkinson into her office, claiming that he had neglected to sign a health care request form that was related to an October 12, 2011 visit to healthcare. Atkinson informed Smith that it was not his handwriting on the form; a Corrections Officer had told health care that Atkinson had a condition that might be methicillin-resistant staphylococcus aureus ("MRSA").[6] Atkinson was told to report to health care (*Id.* at ¶ 13).

That same day, Atkinson filed Step I of SMT-111110137128i ("the fraud grievance") claiming "[f]raud" – someone had used his personal information to "forg[e] a legal document" (*Id.* at ¶ 14).

Smith held an administrative hearing on October 31, 2011, and claimed that she advised Atkinson of his right to file a grievance; Atkinson did not attend the hearing because he was "absent and at work" (*Id.* at ¶¶ 15, 30). Smith subsequently determined that Atkinson owed the $5.00 co-pay related to the healthcare request form, and subtracted that amount from Atkinson's account. (*Id.* at ¶ 15).

On November 11, 2011, Cooke denied Atkinson's fraud grievance, because he had not made an attempt to resolve the issue (*Id.* at ¶ 16).[7]

---

[6] "Methicillin-resistant Staphylococcus aureus (MRSA) infection is caused by a strain of staph bacteria that[ ha]s become resistant to the antibiotics commonly used to treat ordinary staph infections." *See* http://www.mayoclinic.org/mrsa/ (last accessed July 28, 2013).

[7] At this point in his Complaint, Atkinson states that "Smith exercised corruption by refusing to notarize witness affidavit [sic] then by threatening witness with retaliation violating Due Process which caused harm to Plaintiff" (Dkt. No. 1 at ¶ 17). Evidently, Atkinson refers to

On December 28, 2011, Wyse returned to Atkinson's unit, and immediately began retaliating against Atkinson (*Id.* at ¶ 6).[8] Wyse gave him "dirty looks" and issued Atkinson a misconduct violation ("the December misconduct") (*Id.* at ¶¶ 6, 23). Atkinson only became aware of this misconduct ticket when he was called for a misconduct ticket review (*Id.* at ¶ 6). During this review, Atkinson became very upset; he explained his belief that Wyse was retaliating against him because of the sexual misconduct grievance. Atkinson requested to speak with Shift Command, because he was "in fear of his person" (*Id.*). Atkinson spoke with Control Center Sergeant Rodgers; he explained his fears to Rodgers – that Wyse had molested him and was now retaliating against him – and, in response, Rodgers told him that he did not lock up inmates for their protection from staff, and told Atkinson to return to his unit. Atkinson claims that he had a panic attack; he was seen by his Mental Health case worker, Mrs. O'Connell (*Id.*).

That same day, Atkinson filed a Step I of grievance SMT 1112017228b ("the retaliation grievance"), alleging that Wyse was retaliating against him, and citing the sexual misconduct grievance (*Id.* at ¶ 7). In it, Atkinson claimed that Wyse gave him a misconduct ticket every day he worked.

On December 30, 2011, the retaliation grievance was denied by Murchison because it was vague (*Id.* at ¶ 7); her denial stated that Atkinson's grievance contained no description of a

---

Brandon Marshall, one of his inmate witnesses for the sexual misconduct grievance; Atkinson attaches an unnotarized version of Brandon Marshall's affidavit to his proposed amended complaint (Dkt. No. 14, Ex. 1). The events described therein are no different than those described by Atkinson throughout his pleadings

[8] It appears that Wyse left Atkinson's unit around August 19, 2011, when Atkinson filed his Step III appeal of the sexual misconduct grievance (Dkt. No. 1 at ¶ 23). It is not clear whether Wyse's absence – which Atkinson states lasted four and a half months – had anything to do with Atkinson's sexual misconduct grievance.

specific policy violation and suggested that Atkinson be more specific in an appeal (Dkt. No. 16-4).

Atkinson appealed the retaliation grievance to Step II on January 11, 2012 (Dkt. No. 1 at ¶ 7). That same day, Atkinson was interviewed by Cooke; Cooke told Atkinson to "lay [sic] down," and Atkinson understood her to mean that there would be repercussions if he filed more grievances (*Id.*). Atkinson was terminated from his MSI Distribution job the day after he met with Cooke (*Id.*).

In the meantime, an administrative hearing was held on the December misconduct; Atkinson told Stone about his sexual misconduct grievance; that he believed Wyse was retaliating against him; and, asked to speak with the State Police to pursue charges against Wyse (*Id.*). Stone found Atkinson guilty of the December misconduct and ordered sanctions (*Id.*).

Atkinson appealed Stone's decision to Brown, stating that his appeal was based on mental duress, retaliation, and a conflict of interest. Brown denied Atkinson's appeal based on lack of proof; Atkinson alleges that his witnesses were not interviewed (*Id.* at ¶8).[9]

Atkinson next wrote to Brown and Bradshaw asking for help in contacting the State Police. In response, Bradshaw changed his telephone PIN number (*Id.* at ¶ 9). Atkinson wrote a formal letter to the State Police and received a response dated March 1, 2012 stating that his complaint was referred to the Internal Affairs Section in Lansing (*Id.* at ¶ 10).

On February 9, 2012, Meeker shook down Atkinson's cell, took medical supplies (gauze) that were for treatment of his MRSA infection, and issued Atkinson a misconduct violation ("the MRSA misconduct") (*Id.* at ¶11; Dkt. No. 14, Ex. 2). Custard reviewed the violation with Atkinson, and Atkinson explained that he was being treated for MRSA; Custard stated that

---

[9] This Magistrate Judge assumes that Atkinson refers to his witnesses listed on the sexual misconduct grievance; no other witnesses are mentioned throughout his pleadings.

Atkinson's MRSA must have "dried up," and Schort, who was in the office at the same time, agreed (Dkt. No. 1 at ¶ 11). Atkinson was called to medical soon after, where a swab of his knee tested positive for MRSA; Atkinson claims that, within a few days, his knee "had exploded[,] there were tunnel[-]like holes in [his] right knee with large amounts of puss coming out" (*Id.* at ¶ 11).

On February 13, 2012, Atkinson reported to Schort's office for a hearing on the MRSA misconduct; Atkinson told Schort that he had a medical detail for the gauze. Schort never returned the gauze, and this – as well as Meeker and Custard's initial confiscation of his gauze – was done out of retaliation (*Id.* at ¶ 12).

Schort asked Atkinson to sign a box to receive a copy of the hearing; in actuality, the box he signed was an admission of guilt and denial of a right to appeal. (*Id.* at ¶ 47). Schort ordered sanctions,[10] although Atkinson explained to Schort that his misconduct violation was false, and in direct retaliation for filing the sexual misconduct grievance (*Id.* at ¶ 48).

### B.  Proposed Amended Complaint

Atkinson alleges that, since filing his original complaint, "the totality of retaliation and cruelty described therein has caused severe chest pains to the Plaintiff who was taken in an ambulance to Allegiance Hospital" (Dkt. No. 14 at ¶ 2).

On January 4, 2012, Atkinson appealed Polzien's finding that Atkinson was guilty on an allegedly false misconduct violation; Herron wrote the ticket. Atkinson claims that this misconduct was false, because the written report indicated that Atkinson's misconduct occurred

---

[10] Atkinson does not state what his sanctions entailed.

in the future: April 16, *2016* (*Id.* at ¶ 21).[11] His appeal was heard on April 25, 2012, over 100

days after he requested an appeal. Atkinson states that this contravenes MDOC guidelines, which

provide for a hearing within a reasonable time. Atkinson's appeal hearing was before Polzien;

Atkinson claims that this was a conflict of interest (*Id.* at ¶¶ 19-20).[12]

At the appeal hearing, Polzien found Atkinson guilty of the misconduct and ordered 25

days of sanctions (*Id.* at ¶ 21).

That same day – April 25, 2012 – Atkinson appealed Polzien's decision; wrote a letter to

Scutt requesting that she pull the false misconduct; wrote Cooke informing her of Polzien's

violations of the internal guidelines and due process; filed grievance SMT12040069127A ("the

Polzien and Herron grievance") against Polzien and Herron  because they "acted outside their

responsibilities with evil intent to punish [Atkinson]"; and, wrote an urgent Mental Health

request because he was feeling severe emotional distress (*Id.* at ¶¶ 22-26; 32).

On April 26 and April 28, 2012, Atkinson wrote two more urgent Mental Health requests

(*Id.* at ¶ 26).

On April 28, 2012, Atkinson wrote Scutt again, requesting that she pull his false

misconduct and dismiss the sanctions that Polzien had imposed against him (*Id.* at ¶ 26).

On April 30, 2012, Atkinson was seen by Mental Health Supervisor Bull-Ehinger ("Bull-

Ehinger"); Atkinson reported that he was not doing well, had not recovered from the previous 47

days of sanctions, and was concerned for his health and safety (*Id.* at ¶ 28).  Bull-Ehinger

---

[11] Atkinson does not state the basis for his misconduct violation – it does not appear to correspond to any of the misconduct violations he references in his Complaint, and those mentioned did not involve Polzien and were appealed by Atkinson before filing his proposed amended complaint – or why it was false – other than the year written being 2016.

[12] It appears that Atkinson refers to a conflict of interest because Polzien had presided over the initial misconduct hearing.

contacted Brown and requested that she alter Atkinson's sanctions to include one hour of out of cell exercise per day (*Id.* at ¶ 29).

On May 1, 2012, Atkinson filed grievance SMT1205070428B ("the grievance on all Defendants") "on all Defendants," alleging ongoing retaliation and deliberate indifference to Atkinson's health and safety (*Id.* at ¶¶ 30, 33).

On May 5, 2012, Atkinson filed a Step II appeal of the Polzien and Herron grievance (*Id.* at ¶ 32). On May 10, 2012, Atkinson filed a Step II appeal of the grievance against all Defendants (*Id.* at ¶ 33).

On May 11, 2012, Atkinson wrote another urgent Mental Health, because was still in a state of mental distress, and he had not yet heard whether Brown had decided to grant Bull-Ehinger's request (*Id.* at ¶¶ 31, 34). Bull-Ehinger saw Atkinson on May 15, 2012; she put in a second request to Brown asking that she amend Atkinson's sanctions (*Id.* at ¶35). The next day, Brown granted the request (*Id.* at ¶ 36).

On May 25, 2012, Atkinson mailed his Step III appeal of the grievance against all Defendants to the Director's office in Lansing (*Id.* at ¶ 33). Between May 16, 2012 and July 18, 2012,[13] Atkinson mailed his Step III appeal of the Polzien and Herron grievance to the Director's Office in Lansing (*Id.* at ¶ 37).

On the morning of July 18, 2012, as he passed by Atkinson, Schort stated "Thankyou [sic] for ending my career with a bang" (*Id.* at ¶ 38).

---

[13] Atkinson wrote "04-16-2012," but, because of where this claim falls sequentially in his proposed amended complaint, and because Atkinson had only sent Step II of this grievance on May 5, 2012, this Magistrate Judge assumes that Atkinson made a typographical error (Dkt. No. 14 at ¶37).

On August 7, 2012, Atkinson experienced severe chest pains and elevated blood pressure; he was taken in an ambulance to Allegiance Hospital for heart attack symptoms (*Id.* at ¶ 39).

## IV.   STANDARDS OF REVIEW

### A.  *Summary Judgment*

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material only if it might affect the outcome of the case under the governing law.  *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986).  On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of evidence to support the non-moving party's case.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita*, 475 U.S. at 587.  The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury or whether the evidence is so one-sided that the moving party must prevail as a matter of law.  *Anderson*, 477 U.S. at 252 ("[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff").

-11-

## B.  Amendment of Pleadings

A party may amend his complaint with leave of court at any time, and such leave "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Despite the liberal construction accorded civil rights complaints, *see Leatherman v. Tarrant County Narcotics Intell. & Coordin. Unit*, 507 U.S. 163, 167-68, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *Jones v. Duncan*, 840 F.2d 359, 361 (6th Cir. 1988), a plaintiff will fail to state an adequate claim if his allegations are premised upon mere conclusions and opinions. *See Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987). *Mulazim v. Corrigan*, 7 Fed.Appx. 427, 431 (6th Cir. 2001).

Furthermore, a court need not grant a plaintiff's leave to amend his complaint if there is evidence of "futility of amendment." *Forman v. Daivs*, 371 U.S. 178, 182, 83 S. Ct. 227 (1962); *see also Colvin v. Caruso*, 605 F.3d 282, 294 (6th Cir. 2010) ("A motion to amend a complaint should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." (quoting *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995) (internal quotations omitted))).

## V.   PROPOSED AMENDED COMPLAINT

Atkinson's Proposed Amended Complaint facially cured the defects that this Court referenced in denying his initial motion without prejudice: he incorporated completely the facts alleged in his initial complaint in anticipation of an amended complaint's effective supersession of the original complaint, and provided a legible copy of the proposed amended complaint along with his motion.

Atkinson's amended complaint seeks to add Polzien and Herron, adds claims against Brown and Cooke, and repeats various conclusory allegations made in his initial complaint.[14] However, as discussed below, because the proposed amended complaint contains no claims capable of surviving summary judgment, amendment of Atkinson's Complaint would be futile,[15] and Atkinson's motion should be **DENIED**.

## VI.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

Defendants argue that only Atkinson's claim of sexual misconduct against Wyse represents a proper exhaustion of his administrative remedies, while the remaining claims do not represent full and proper exhaustion of administrative remedies, and therefore preclude this §1983 lawsuit. *See Jones v. Bock*, 549 US 199.[16]

---

[14] Atkinson also references a lack of exercise and fresh air for 65 days in 2012, which aggravated existing conditions of "Foraminal Stenosis at C5-C6 (cervical spine), stiffness and pain, muscle spasms, arthritis, left eye pain, depression, [and] anxiety, and caused lethargy and overall muscle atrophy." He further mentions a grievance filed on Physician Assistant Kakani, who allegedly denied his request for an MRI and CAT SCAN (Dkt. No. 14 at ¶¶83-85). Administrative remedies being unexhausted at this juncture, and Kakani not a named Defendant, these claims should likewise be dismissed.

[15] Furthermore, it is not clear to this Magistrate Judge how these proposed claims and defendants relate to Wyse's conduct, or the alleged retaliatory conduct that Atkinson otherwise agues as stemming from his filing of grievances against Wyse.

[16] In addition to his sexual misconduct grievance, Atkinson has filed four relevant Step III grievances appeals while incarcerated at SMT (Dkt. No. 16-3). In one grievance – SMT1106066212f, filed in June of 2011 – Atkinson complained that his prescription for Baclofen had not been renewed and refers to Dr. Hussain, who is not one of the listed Defendants (Dkt. No. 16-7); this grievance pertains to none of the allegations in Atkinson's pleadings. Defendants argue that two of Atkinson's grievances – the Polzien and Herron grievance, and the grievance against all Defendants – were still pending when Atkinson filed his initial April 27, 2012 Complaint (Dkt No. 16 at 6(CM/ECF)). These grievances correspond to the additional claims that Atkinson brings in his proposed amended complaint, and are addressed in full below. As to the final grievance, the retaliation grievance, Defendants argue that, while each step was completed, Atkinson did not follow the proper procedures pursuant to MDOC policy

-13-

## A. Legal Standard

Under the Prisoner Litigation Reform Act ("PLRA"), a prison inmate cannot bring a civil rights action challenging prison conditions until "such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Specifically, a prisoner must follow the state corrections system's grievance procedure and properly exhaust all administrative remedies before filing an action in federal court. *Woodford v. Ngo*, 548 U.S. 81, 88, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). Proper exhaustion includes "compliance with an agency's deadlines and other critical procedural rules." *Id*. at 90. "[A]n untimely or otherwise improper grievance, even though appealed through all steps of a grievance procedure, does not fulfill the PLRA exhaustion requirement." *Fuqua v. Straub*, 08-12956, 2009 WL 2602427 (E.D. Mich. Aug. 19, 2009).

Furthermore, a prisoner must also complete the administrative process *before* filing a lawsuit in federal court. *Freeman v. Francis,* 196 F.3d 641, 645 (6th Cir. 1999).  A prisoner is not permitted to exhaust administrative remedies while his federal suit is pending. *Larkins v. Wilkinson*, 1998 WL 898870, at *2 (6th Cir. Dec. 17, 1998) (unpublished) (dismissing plaintiff's complaint where his "attempt to exhaust his available administrative remedies only after filing suit in federal court ignores the clear mandate of §1997e(a) which requires exhaustion . . . prior to filing suit in federal court."); *see also Perez v. Wisconsin Dep't of Corrs.*, 182 F.3d 532, 533 (7th Cir. 1999) (case remanded with instructions to dismiss for failure to exhaust administrative remedies). "The level of detail necessary in a grievance to comply with the grievance procedures

---

directive 03.02.130; he simply appealed a vague grievance. (Dkt. No. 16-4; Dkt. No. 16 at 7 (CM/ECF)). *See Burnett v. Howard*, 2:09-CV-37, 2010 WL 1286256, at *3 (W.D. Mich. Mar. 30, 2010) ("As long as the state clearly rejects a grievance for a reason explicitly set forth in the applicable grievance procedure, a subsequent § 1983 claim based on the grievance will be subject to dismissal for failure to properly exhaust.") (internal citations and quotations omitted). This grievance fails on its merits, and is addressed in full below.

-14-

will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 219.

The MDOC provides prisoners with a method to seek redress for alleged violations of policy and procedure or unsatisfactory conditions of confinement. The grievance procedure and applicable rules are set forth in MDOC Policy Directive 03.02.130 ("the Policy") (Dkt. No. 16-2). The Policy was last updated on March 5, 2007, and became effective for all grievances, including Atkinson's, filed after July 9, 2007.

The Policy outlines a three-step written grievance procedure. Prior to filing a grievance at Step I, a prisoner is generally required to seek an informal resolution of the issue with the staff member involved. After a formal Step I grievance has been filed, the prisoner may file a grievance at the next step if he is dissatisfied with the response received at the previous step, or if a timely response is not received. As it relates to filing a Step III grievance, the Policy requires that "the grievant must send a completed Step III grievance. . .within ten business days after receiving the Step II response or, if no response was received, within ten business days after the date the response was due, including any extensions" (*Id.*).

### B. Claims Against Smith, Custard, Meeker, and Schort

Atkinson makes Eighth Amendment and due process allegations that stem from the chain of events leading to the fraud grievance and the MRSA misconduct. Defendants do not explicitly acknowledge all of these claims in their motion, but they should fail for failure to exhaust administrative remedies:

> [I]t is obvious from the face of the complaint that these claims are not exhausted . . . [P]risoners must exhaust the institutional grievance procedure, not some alternative remedy that is not designed to address prison conditions." *Cadogan v. Vittitow,* 2007 WL 2875464, *3 (E.D.Mich. 2007), quoting, *McKaye v. Burnett,* 104 Fed.Appx. 515, 517 (6th Cir. 2004) (internal quotation marks and citations omitted). . . . [T]hese paragraphs

-15-

fail to state a claim because it is obvious on their face that they are unexhausted. *See e.g., Deruyscher v. Michigan Dep't of Corrections Health Care,* 2007 WL 1452929, *2 (E.D.Mich. 2007), citing, *Jones v. Bock,* 549 U.S. 199, 127 S.Ct. 910, 921–22, 166 L.Ed.2d 798 (2007) (While the failure to exhaust is an affirmative defense, prisoner complaints may still be subject to *sua sponte* dismissal for failure to exhaust administrative remedies); *Spaulding v. Oakland Co. Jail Medical* Staff, 2007 WL 2336216, *3 (E.D.Mich. 2007) (Where it is clear from the face of the complaint that a plaintiff failed to properly exhaust his administrative remedies in accordance with the applicable grievance policy, the plaintiff's complaint is subject to *sua sponte* dismissal for failure to state a claim pursuant to *Jones v. Bock.*).

*Proctor v. Applegate*, 661 F. Supp. 2d 743, 774 (E.D. Mich. 2009).

Atkinson alleges that Smith "exercised [c]orruption violating [his] Fourteenth Amendment" rights when she: relied upon a document that was forged, even after he alerted Smith that it was not his handwriting on the form; took $5.00 from his account, claimed he was at an administrative hearing that he did not attend; and rejected a related grievance that he subsequently filed. Atkinson supports his claim with conclusory references to due process (Dkt. No. 22 at 9-10).[17] A grievance related to this chain of events does not appear on the MDOC Prisoner Step III Grievance report (Dkt. No. 16-3). Furthermore, Atkinson does not claim to have filed anything beyond Step I, which was rejected because he did not attempt to resolve the issue before filing Step I.[18]

Atkinson also makes various allegations stemming from the chain events related to his MRSA misconduct. Specifically, Atkinson alleges that Meeker and Custard violated his Eighth and First Amendment rights by shaking down his cell, taking medical supplies, and writing a corresponding misconduct violation while he was being treated for MRSA. Similarly, Atkinson alleges that Schort exercised cruel and unusual punishment by denying him his medical gauze on

---

[17] All page numbers refer to CM/ECF pagination.

[18] Atkinson also alleges due process violations against Cooke in her rejection of Step I. As discussed below, a supervisor's rejection of a grievance cannot, alone, rise to the level of a constitutional violation.

February 13, 2012; failing to return it; and, ordering sanctions on him after coercing him to sign an admission of guilt (Dkt. No. 22 at 13). But, in the face of Defendants' motions to dismiss for failure to exhaust, Atkinson has failed to point to any grievance related to his MRSA medical supplies.

As such, Atkinson's claims against Smith, Custard, Meeker, and Schort should be dismissed without prejudice for failure to exhaust administrative remedies.

## VII.   ANALYSIS

Because Atkinson's remaining claims should fail on the merits, this Magistrate Judge need not address Defendants' exhaustion defenses as to the remaining claims.

### A.  *Eighth Amendment Claims*

#### 1.       *Wyse*

Atkinson alleges that the Wyse's sexual misconduct – which was done "with intent of sexual gratification and to humiliate [Atkinson]" – constitutes cruel and unusual punishment in contravention of the Eight Amendment (Dkt. No. 1 at ¶¶18-19). Because the facts alleged, if true, would be insufficient as a matter of law to satisfy an Eighth Amendment claim, Atkinson's Eighth Amendment claim against Wyse fails.

The Constitution "does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), nor does it permit inhumane ones; "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also Farmer*, 511 U.S. at 832. The Eighth Amendment imposes affirmative duties on prison officials, requiring that they "must provide humane conditions of confinement; . . . ensure that inmates receive adequate food,

-17-

clothing, shelter and medical care[;] and [ ] 'take reasonable measures to guarantee the safety of inmates.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). "Moreover, physical injury need not result for the punishment to state a cause of action, for the wanton infliction of psychological pain is also prohibited." *Calhoun v. DeTella,* 319 F.3d 936, 939 (7th Cir. 2003) (citing *Hudson v. McMillian*, 503 U.S. 1, 16 (1992) (Blackmun, J., concurring)).

The following test applies to Eighth Amendment claims: First, the alleged punishment should be objectively harmful enough to establish a constitutional violation; under the objective standard, "conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). Second, the official must have acted with a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Allegations of sexual abuse may meet both elements, thereby stating a claim under Section 1983:

> Where no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct, the abuse itself may, in some circumstances, be sufficient evidence of a culpable state of mind. *See Hudson v. McMillian,* 503 U.S. 1, 6-7, 112 S.Ct. 995, 998-99, 117 L.Ed.2d 156 (1992). It is therefore apparent, even without considering exactly what *mens rea* is necessary to show a "wanton" state of mind for a claim of sexual abuse, that a prison official who sexually abuses a prisoner can be found to have a sufficiently culpable state of mind to violate the prisoner's constitutional rights.

*Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997).

Thus, "[s]exual abuse of a prisoner by a corrections officer may in some circumstances violate the prisoner's right to be free from cruel and unusual punishment." *Jackson v. Madery*, 158 F. App'x 656, 662 (6th Cir. 2005) (internal citations omitted). However, where an incident is "isolated, brief, and not severe," it may not rise to a violation of a prisoner's right to be free from cruel and unusual punishment. *See, e.g., Jackson v. Madery*, 158 Fed.Appx. 656, 662 (6th Cir. 2005) (an isolated and brief alleged sexual abuse – rubbing and grabbing the prisoner's buttocks

-18-

– did not rise to the level of cruel and unusual punishment); *see also Boddie,* 105 F.3d at 861 (the court declined to find an Eighth Amendment violation where a female prison guard made a pass at a prisoner, then pressed her body against him in sexual manner on two occasions); *Jones v. Miller*, No. 07-CV-14881, 2009 WL 514195 (E.D. Mich. Feb. 27, 2009) (referring to a prison guard's alleged touching of prisoner's genitals during a shake down as "a single incident of limited duration that could not be reasonably considered severe").

Such is the case here: Atkinson refers to a single incident of nonconsensual sexual touching during a pat down. While the question of whether Wyse sexually fondled Atkinson is disputed (Dkt. No. 16-9; Dkt. No. 16 at 17-18), if true, "it [coul]d not rise to the level of a violation of [Atkinson]'s constitutional right to be free from cruel and unusual punishment." *Jackson*, 158 F. App'x at 662; *Jones*, 2009 WL 514195, at *4 (E.D. Mich. Feb. 27, 2009) ("Not every act of improper conduct by a corrections official constitutes a constitutional violation."). As such, Atkinson's cruel and unusual punishment claim against Wyse lacks merit.[19]

---

[19] Therefore, Atkinson's derivative arguments against Rodgers, Stone, Brown, Bradshaw, Scutt, and Owens – that they were deliberately indifferent to his health and safety, and failed to protect Atkinson from Wyse – likewise lack merit. "It is not enough for a complaint under § 1983 to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law. Some factual basis for such claims must be set forth in the pleadings." *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986). To the extent that Atkinson claims that these Defendants' behavior constitutes deliberate indifference to his mental distress, these arguments should likewise fail (Dkt. No. 22 at 15-17). Prison officials may violate the Eighth Amendment if they are deliberately indifferent to an inmate's serious medical needs, including psychological or psychiatric care. *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996). Here, Atkinson makes no claim that he did not receive medical care; and, although Atkinson stresses that he is mentally ill and claims that he suffered a panic attack and chest pains, it appears from the facts that he did receive prompt and adequate medical attention to his mental and physical needs where relevant (Dkt. No. 1 ¶¶ 35-36, 39; Dkt. No. 22 at 10-11 (CM/ECF)).

### 2.      *Brown*

In his proposed amended complaint, Atkinson alleges that Brown inflicted cruel and unusual punishment when it took her 16 days to heed Bull-Ehinger's request that his sanctions include time out of his cell to exercise (Dkt No. 14 ¶¶ 81-84).

"The Sixth Circuit has explained that '[t]he deliberate-indifference requirement is satisfied only if [the official] knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Koubriti v. Rojo*, CIV.A. 05CV74343DT, 2007 WL 45923, at *6 n.5 (E.D. Mich. Jan. 3, 2007) (quoting *Spencer v. Bouchard*, 449 F.3d 721, 728 (6th Cir.2006)) (internal quotations omitted). Here, Atkinson states that Brown made sure to incorporate exercise into Atkinson's sanctions immediately after Bull-Ehinger's second request, and after only sixteen days from the initial request. This claim cannot rise to the level of a constitutional violation, and ought to be dismissed.

### B.  *First Amendment Retaliation Claims*

Atkinson alleges that his First Amendment rights were violated because *all* Defendants – in one way or another – retaliated against him for filing the sexual misconduct grievance.[20] His claims of retaliation as to all Defendants – except Cooke and Wyse – are conclusory statements lacking in any factual detail sufficient to create a genuine issue of material fact. The remaining allegations against Wyse and Cooke are discussed below.

---

[20] In effect, Atkinson alleges a conspiracy to retaliate among these Defendants, following Wyse's sexual misconduct.   Atkinson also alleges corruption and conspiracy among all Defendants to violate his civil rights. Atkinson's claims are vague and conculsory. "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

-20-

"A prisoner retains First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Proctor,* 661 F. Supp. 2d at 772 (citing *Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974)). *In Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999), the Sixth Circuit held that a retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct."

An inmate engages in protected conduct when he files grievances. *Jackson*, 158 F. App'x at 660 ("A prisoner has a First Amendment right to file grievances against prison officials, if the grievances are not frivolous." (citing *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000))). An adverse action is one capable of deterring a person of ordinary firmness from continuing to engage in that conduct. *Thaddeus–X*, 175 F.3d at 398. Moreover, a prisoner's claims of retaliation must be examined with skepticism and particular care because they are "prone to abuse since prisoners can claim retaliation for every decision they dislike." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)). Atkinson has the burden of proving all three elements of his retaliation claim.

### 1.     *Wyse*

Atkinson alleges that Wyse retaliated against him by giving him "dirty looks" – which is not an adverse action – and writing him a false misconduct ticket on the first day he returned to Atkinson's unit – approximately four and a half months after Atkinson filed his sexual

misconduct grievance (Dkt. No. 1at ¶38).[21] *See Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) ("[temporal proximity] may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'") (citation omitted). Atkinson believes that the false misconduct was designed "to teach [him] a lesson," and notes that he overheard Wyse say "ATKINSON, MY BUDDY, I ALREADY WROTE HIM A TICKET [sic]," which Atkinson viewed as Wyse bragging to other Correctional Officers about writing the false misconduct ticket (Dkt. No. 1 at ¶ 34).[22]

This is hardly enough for Atkinson to prove that his grievance was a substantial or motivating factor in Wyes's alleged retaliatory conduct. *See Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977) "Conclusory allegations are insufficient to show that a defendant was motivated by the exercise of a plaintiff's First Amendment rights." *Proctor v. Applegate*, 661 F. Supp. 2d 743, 772 (E.D. Mich. 2009) (citing *Kensu v. Haigh,* 87 F.3d 172, 175 (6th Cir.1996)). And, "[b]are allegations of malice on the part of a defendant are not enough to establish retaliation claims." *Proctor*, 661 F. Supp. 2d at 772 (citing *Crawford–El v. Britton,* 523 U.S. 574, 588, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998)).

Atkinson also alleges retaliation by Wyse because he only did three days of sanctions in the five years prior to filing grievances against Wyse; since filing his grievance against Wyse, Atkinson claims to have done at least 47 days of sanctions (Dkt. No. 1 at ¶¶ 51-52). In his

---

[21] Atkinson also alleges that the chain of events involving Wyse's "shakedown" of Atkinson's bunk and the destruction of his area of control constitutes First Amendment retaliation. However, these incidents took place on July 30, 2011, *before* Atkinson filed his sexual misconduct grievance. Further, to the extent that Atkinson suggests that the false misconduct violation was in retaliation for his refusal of Wyse's perceived sexual advances, his retaliation claim similarly lacks merit (Dkt No. 1 at ¶ ¶ 20-23). *See Boddie*, 105 F.3d at 862 (2d Cir. 1997) ("[A] prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report. There must be more, such as retaliation against the prisoner for exercising a constitutional right." (internal citations omitted)).

[22] Atkinson's pleadings do not explain the basis of this misconduct, or why it was false.

pleadings, Atkinson refers to a misconduct for sand paper, the December misconduct, and the MRSA misconduct – which Wyse had no part in; Atkinson describes no other false misconducts. These claims, too, amount to mere conjecture.

Finally, where a prisoner alleges that a corrections employee retaliated against him by filing a false misconduct violation, "[a] finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.'" *Jackson*, 158 Fed.Appx. at 656 (citing *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994)). Atkinson was found guilty of the December misconduct charge after an administrative hearing. He presents no facts to suggest that the misconduct at issue – the substance of which Atkinson likewise fails to describe – was indeed false.

### 2.      *Cooke*

Atkinson's First Amendment claim against Cooke should likewise fail. Atkinson claims that Cooke implied repercussions for filing grievances when he met with her regarding Step II of the retaliation grievance; "the next day [he] was terminated from his [MSI] job for not laying down [sic] and going with the flow of corruption" (Dkt. No. 22 at ¶¶ 41-42). Atkinson presents no facts to support how his filing of grievances – which did not name Cooke – would result in her retaliating against him; Atkinson similarly makes no showing of how Cooke was involved in his dismissal from his MSI job. Moreover, as discussed below, Atkinson had no liberty or property interest in his MSI job.

Other than his subjective beliefs, Atkinson has not alleged or demonstrated any causal connection between his grievances and false misconduct violations, the number of sanctions served, or his loss of his MSI job. As such, he fails to make out any cognizable First Amendment claim against any of the Defendants.

-23-

### C.  Fourteenth Amendment Due Process Claims[23]

#### 1.        Bradshaw, Scutt, and Murchinson

Atkinson alleges due process violations against Bradshaw,[24] Scutt,[25] and Murchinson[26]
for their improper handling of his grievances: neither Atkinson nor his listed witnesses were
interviewed at various steps in the grievance process. In *Monell v. Dep't of Soc. Serv's*, 436 U.S.
658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that in a § 1983 action,
liability cannot be based on a theory of respondeat superior, or mere supervisory liability. *See
also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984):

> [T]he § 1983 liability of supervisory personnel must be based on more than the right to
> control employees. Section 1983 liability will not be imposed solely upon the basis of
> respondeat superior. There must be a showing that the supervisor encouraged the specific
> incident of misconduct or in some other way directly participated in it. At a minimum, a §
> 1983 plaintiff must show that a supervisory official at least implicitly authorized,

---

[23] Although he mentions both Fourteenth and Fifth Amendments, Atkinson's due process
allegations appear to argue that Defendants' actions constitute a violation of the Fourteenth
Amendment; the Fifth Amendment applies only to the federal government. *See Scott v. Clay
County, Tenn.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000) (citing *Sturgell v. Creasy*, 640 F.2d 843,
850 (6th Cir. 1981)); *Walker v. Hughes*, 558 F.2d 1247, 1257 (6th Cir. 1977);  Atkinson also
makes vague allusions to the Sixth Amendment, 18 USCA § 2244(b) – which proscribes bribery
in sporting contests – and, at numerous points, the Racketeering Corrupt Organization Act
(RICO) and the Prison Rape Elimination Act (PREA).

[24] As to Bradshaw, Atkinson alleges that she violated his due process rights because she
falsely wrote that Atkinson said nothing to anyone following Wyse's sexual misconduct, and
refused to interview his witnesses.

[25] As to Scutt, Atkinson alleges that Scutt violated his substantive due process rights
when she denied his sexual misconduct grievance, retaliation grievance, grievance against
Herron and Polzien, and general grievance against all defendants (Dkt. No. 1 at ¶¶ 25-28; Dkt
No. 22 at 6-7 (CM/ECF)).

[26] As to Murchinson, Atkinson alleges that she exercised deliberate indifference to due
process when she failed to interview Atkinson at Step I of his retaliation grievance and rejected
the grievance as vague (Dkt. No. 1 ¶ 37; Dkt. No. 22 at 11-12 (CM/ECF)).

approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate (internal citations omitted).

"Plaintiff must prove that [the supervisor] did more than play a passive role in the alleged violations or show mere tacit approval of the goings on. He must show that the supervisors somehow encouraged or condoned the actions of their inferiors." *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *see also Cardinal v. Metrish*, 564 F.3d 794, 802-03 (6th Cir. 2009) ("[E]ven if a plaintiff can prove a violation of his constitutional rights, his § 1983 claim must fail against a supervisory official unless the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.").

Moreover, a supervisory official's awareness of alleged *illegal conduct after the fact* does *not* provide a basis for imposition of damages under 42 U.S.C. § 1983. *Weaver v. Toombs*, 756 F.Supp. 335, 337 (W.D.Mich. 1989). Merely being aware of a prisoner's complaint and failing to take corrective action is insufficient to impose liability on supervisory personnel under § 1983. *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988), *cert. den*., 488 U.S. 1007, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989).

> [W]here defendants' only roles . . . involve the denial of administrative grievances or the failure to act . . . they cannot be liable under § 1983. Liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon a mere failure to act. Claims that are based simply on the denial of a grievance do not state a claim of constitutional dimension. Furthermore, an allegation that a supervisor was aware of an actionable wrong committed by a subordinate and failed to take corrective action is insufficient to impose liability on supervisory personnel under § 1983.

*Proctor*, 661 F. Supp. 2d at 765 (citing *Shehee,* 199 F.3d at 300 (as against defendants whose only involvement was the denial of administrative remedies and the "failure to remedy the alleged retaliatory behavior[,]" "[t]here is no allegation that any of these defendants directly participated ... in the claimed ... acts[ ]."); *Weaver v. Toombs,* 756 F.Supp. 335, 337 (W.D.Mich.1989) ("The mere fact that these defendants found plaintiff's ... grievance concerning

the seizure to be without merit is insufficient to state a claim against them.")) (internal citations and quotations omitted).

Atkinson has not made any factual allegations showing Warden Scutt or Murchinson's personal involvement in any alleged misconduct. Moreover, although Bradshaw did not interview Atkinson's witnesses, even if Atkinson's witnesses had been interviewed, Atkinson does not claim that his witnesses would have given any report different from the events that Atkinson describes himself. He merely states that the defendants did not address his concerns when they denied his grievances. This is insufficient to impose liability under § 1983.

### 2. *Cooke*

Atkinson alleges that Cooke also violated his constitutional rights when she rejected his grievance against Herron and Polzien and his conspiracy grievance against all Defendants. Given the preceding analysis, this claim, too, should be rejected.

Atkinson further suggests that Cooke violated his due process rights when he was fired from his MSI job. In order to state a cognizable claim under the Fourteenth Amendment's Due Process clause, a plaintiff must have either a liberty or a property interest in his MSI job assignment. *Silver v. Franklin Twp. Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992). However, "[a]s a general rule, prisoners have no right to be assigned to work at, or to continue working, at a particular job." *Howard v. Mgmt. Training Corp.*, 3:13CV580, 2013 WL 1284243, at *2 (N.D. Ohio Mar. 25, 2013) (citing *Newsom v. Norris,* 888 F.2d 371, 374 (6th Cir.1989) (prisoner does not have a constitutional right to prison employment or a particular prison job); *Kantamanto v. King,* 651 F.Supp.2d 313 (E.D.Pa. 2009) (granting summary judgment to defendants on plaintiff's [Fourteenth Amendment] Due Process claim, alleging termination from his job at the prison law library in retaliation for writing an article critical of prison conditions).

-26-

Atkinson has alleged neither interest, and the facts alleged in his motion for summary judgment do not give rise to a claim for relief under the Constitution. Thus, Atkinson has not stated any basis upon which this Court should find he has a liberty interest in retaining the position from which he was removed. His due process claims should be dismissed.

### D.  The Unserved and Unnamed Defendants Should be Dismissed[27]

Finally, as to the remaining unserved defendants (Polzien and Herron), it is recommended that they be dismissed without prejudice. "An inmate who brings a civil rights complaint must specifically identify each defendant against whom relief is sought and must give each defendant notice of the action by serving upon him a summons and copy of the complaint." *Reed–Bey v. Pramstaller*, No. 06–10934, 2007 WL 2421422, *2 (E.D.Mich. Aug.23, 2007), citing *Feliciano v. DuBois*, 846 F.Supp. 1033, 1048 (D.Mass.1994). Under Fed.R.Civ.P. 4(m), defendants must be served within 120 days of filing the complaint.

Here, neither Polzien nor Herron has been served and this case has been pending for more than a year (without any inquiry from Plaintiff as to whether these defendants have been served); thus, it is recommended that the unserved defendants be dismissed without prejudice. *Mackall v. Doe*, No. 05–60083–AA, 2005 WL 1843449, *1 (E.D.Mich. July 29, 2005), citing *Awdish v. Pappas*, 159 F.Supp.2d 672, 673, n. 1 (E.D.Mich.2001), and *Johnson v. City of Ecorse*, 137 F.Supp.2d 886, 892 (E.D.Mich.2001). This Report and Recommendation will serve as notice to Plaintiff under Rule 4(m).

---

[27] Plaintiff also lists two unnamed grievance specialists, and brings claims against them in his pleadings (Dkt. No. 22 at 9 (CM/ECF)). Those claims should be rejected.

### E.  Qualified Immunity

In the alternative, Defendants argue that they are entitled to qualified immunity.  The doctrine of qualified immunity generally shields state actors from liability under § 1983 based on their discretionary acts.  *See Anderson v. Creighton*, 483 U.S. 635, 638-40 (1987); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Daugherty v. Campbell*, 935 F.2d 780, 783-84 (6th Cir. 1991).  As noted by the Sixth Circuit in *Daugherty*, "[q]ualified immunity entitles its possessor to immunity from suit rather than a mere defense to liability." *Id.* at 783 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  Thus, government actors have the freedom to perform their official duties without fear that even a slight misstep will trigger their financial ruin.  *Wyatt v. Cole*, 504 U.S. 158, 167 (1992).

Government actors may lose this immunity when they violate clearly established constitutional rights of which a reasonable person should have known.  *Anderson*, 483 U.S. at 638-39; *Harlow*, 457 U.S. at 818.  "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action." *Anderson*, 483 U.S. at 639 (quoting *Harlow*, 457 U.S. at 819).

Atkinson bears the burden to defeat this immunity, which is a legal issue to be decided by the Court.  *See Blake v. Wright*, 179 F.3d 1003, 1007 (6th Cir. 1999).  A court must consider: (1) whether, viewing the evidence in the light most favorable to the injured party, a constitutional right has been violated; and, (2) whether that right was clearly established.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Courts are not required to address these questions in sequential order. *Pearson v. Callahan,* 555 U.S. 223 (2009).

-28-

"When conducting an inquiry to determine whether a constitutional right is clearly established, the law of our [C]ircuit requires us to look first to decisions of the Supreme Court, then to decisions of this Court and other courts within our [C]ircuit, and finally to decisions of other circuits." *Daugherty*, 935 F.2d at 784 (citations and quotation marks omitted). The standard for qualified immunity "depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified. . . ." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987)) (quotation marks omitted). Thus, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Russo*, 953 F.2d at 1042. Although it need not be the case that "the very action in question has previously been held unlawful . . . in the light of pre-existing law the unlawfulness must be apparent." *Id.* Immunity applies if reasonable officials could disagree as to whether the conduct violated Lentz's rights. *McCloud v. Testa*, 97 F.3d 1536, 1553 (6th Cir. 1996). However, the doctrine offers no protection to "the plainly incompetent or those who knowingly violate the law." *See Malley v. Briggs*, 475 U.S. 335, 341 (1986).

This Magistrate Judge finds Defendants should alternatively be entitled to qualified immunity; given the above analysis, their actions were not objectively unreasonable in light of clearly established law.

### F.  State-Law Claims

Atkinson alleges various state-law claims – including intentional infliction of emotional distress – against Defendants.

Even if the Court finds that Atkinson has plead viable state-law claims, "district courts may decline to exercise supplemental jurisdiction over a claim under [28 U.S.C. § 1367](a) if[]

-29-

the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3); *see also Grace v. USCAR*, 521 F.3d 655, 679-80 (6th Cir. 2008) (recognizing it is within a court's discretion to determine whether to continue to exercise supplemental jurisdiction over any remaining state law claims when: (1) a court's subject matter jurisdiction is predicated on federal question jurisdiction; and, (2) all federal claims are dismissed). "Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (citations and internal quotations omitted). Because all of Atkinson's federal claims lack merit, the Court should decline to exercise supplemental jurisdiction over Atkinson's state-law claims.

## VIII.   CONCLUSION

For the above-stated reasons, this Magistrate Judge **RECOMMENDS** that Defendants' motions be **GRANTED**, Atkinson's motions be **DENIED**, and his Complaint be **DISMISSED WITHOUT PREJUDICE** as to Polzien and Herron and his state law claims, and **DISMISSED WITH PREJUDICE** to all other claims.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith*

*v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated:  July 31, 2013

*Certificate of Service*

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, July 31, 2013, by electronic and/or ordinary mail.*

*s/Eddrey Butts*
*Case Manager for Magistrate Judge Mark A. Randon*